IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

**PARTITIONS PLUS OF WILMINGTON, INC.**

        Debtor.           Case No.: 04-06776-8-JRL

**H&E EQUIPMENT SERVICES, LLC**

        Plaintiff,

vs.          Adversary Proceeding No.: 05-00261-8-AP

**JAMES B. ANGELL, Trustee in Bankruptcy
for Partitions Plus of Wilmington, Inc., UNITED
STATES FIRE INSURANCE COMPANY, M.B.
KAHN CONSTRUCTION COMPANY, INC.,
SPECIAL FORCE'S GENERAL SERVICES, LLC,
a/k/a SPECIAL FORCES GENERAL SERVICES, LLC,
and BRANCH BANKING & TRUST COMPANY,**

        Defendants.

---

## ORDER

This matter is before the court on the motions to dismiss and motions to abstain filed by M.B. Kahn Construction Company, Inc. ("M.B. Kahn") and United States Fire Insurance Company ("U.S. Fire"). On January 12, 2006, the court conducted a hearing on this matter in Wilson, North Carolina.

### Factual Background

On May 8, 2002, the City of Columbia contracted with M.B. Kahn, a corporation organized under the laws of South Carolina, for the construction and improvement of the Columbia Metropolitan

Convention Center in Columbia, South Carolina (the "project").[1] On May 16, 2003, M.B. Kahn subcontracted a portion of its work on the project to the debtor. In its proof of claim filed in the debtor's bankruptcy case, M.B. Kahn states that under the subcontract it owes the debtor a total of $506,147.63 (the "funds"), which is subject to offsets and cross-offsets by M.B. Kahn. The debtor later subcontracted a portion of its work to Special Force's General Services ("Special Forces"), a limited liability company organized under the laws of South Carolina.[2] Subsequently, Special Forces contracted with the plaintiff, a limited liability company organized under the laws of Louisiana, for rental equipment and services to use in the completion of the project. The plaintiff provided the equipment and services to the project from February 2, 2004 to May 19, 2004 and as a result, Special Forces allegedly owes $102,695.86 to the plaintiff.

On October 16, 2003, the debtor executed a payment bond with U.S. Fire, to which M.B. Kahn was obligee. The bond was in the punitive amount of $2,130,000 and was for the protection of persons supplying labor, material, or both to the project. On that same date, the debtor also executed a performance bond with U.S. Fire, to which M.B. Kahn was obligee. The bond was in the punitive amount of $2,130,000 to secure the performance of the subcontract executed by the debtor and M.B. Kahn. On October 18, 2000, the debtor executed a general agreement of indemnity in favor of U.S. Fire, in which the debtor agreed to indemnify U.S. Fire for demands, claims, loss, and costs incurred

---

[1] The plaintiff alleges that M.B. Kahn served as the general contractor for the project and M.B. Kahn contends it served as construction manager. It is apparently a distinction without much, if any, difference.

[2] The plaintiff alleges that the debtor owes Special Forces for its work on the project. M.B. Kahn denies this assertion.

by U.S. Fire pursuant to the execution of any bond. The plaintiff asserts it has given written notice of its claim to M.B. Kahn and U.S. Fire.

Branch Banking & Trust Company ("BB&T") is a creditor in the debtor's bankruptcy case, secured by the debtor's accounts receivable. Three proofs of claim have been filed by BB&T in the debtor's case for an aggregate amount of $1,642,189.62, with one claim listed as having an undetermined value. While in Chapter 11, the debtor conceded the validity of BB&T's security interest and after conversion, neither the trustee nor any other party in interest has challenged it.

## **PROCEDURAL HISTORY**

On September 9, 2005, the plaintiff filed a complaint against the defendants to recover funds, determine the validity, priority or extent of a lien or other interest in property, and to obtain equitable relief. In Count 1, the plaintiff asserts that Special Forces breached its contract. In Count 2, the plaintiff asserts that the funds held by M.B. Kahn and due to the debtor should be held as a constructive trust for the benefit of the plaintiff. In Count 3, the plaintiff, in the alternative to Count 2, asserts that an equitable lien should be imposed on the funds to serve as security for payment to the plaintiff. In Counts 4 and 5, the plaintiff, as an alternative to Counts 2 and 3, asserts it is an intended third party beneficiary of the contract between M.B. Kahn and the debtor and the contract between the debtor and Special Forces. In Count 6, the plaintiff asserts, as an alternative to Counts 2 and 3, that it is an intended third party beneficiary of the payment bond executed by U.S. Fire. In Counts 7, 8, 9, 10, and 11, the plaintiff asserts a claim of unjust enrichment against M.B. Kahn, Special Forces, U.S. Fire, BB&T, and the trustee. In Count 12, the plaintiff alleges its claim on the funds has priority over any equitable lien by subordination that may be asserted by U.S. Fire. In Counts 13 and 14, the plaintiff alleges its claim on

3

the funds has priority of claim and interest over claims asserted by BB&T or the trustee.

All of the defendants, with the exception of Special Forces, have filed answers to the complaint.[3] On November 10, 2005, M.B. Kahn filed a motion to dismiss for failure to join necessary parties pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure or in the alternative, a motion to abstain pursuant to 28 U.S.C. § 1334(c)(2). In its motion, M.B. Kahn asserted that the court is required to abstain from hearing the proceeding. A similar motion to dismiss or in the alternative, to abstain was filed by U.S. Fire the next day.

On December 12, 2005, the plaintiff filed a memorandum in opposition to the motions to dismiss and motions to abstain filed by the defendants. The plaintiff asserted that the defendant had the burden of showing under Rule 12(b)(7) why any absent party must be joined. If a party is necessary and cannot be joined, defendant must also show why the party is indispensable pursuant to Rule 19(b) of the Federal Rules of Civil Procedure. Additionally, the plaintiff argued that mandatory abstention was not required in this case because the required factors set forth in Blanton v. IMN Financial Corp., 260 B.R. 257, 263 (Bankr. M.D.N.C. 2001), were not met. Specifically, the fifth factor failed as the action could have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334 because complete diversity existed between the plaintiff and defendants.[4] Additionally, neither the plaintiff's complaint nor any other responsive pleadings showed that an action has been commenced in a state

---

[3] The plaintiff alleges that Special Forces is not an ongoing or active business, although it is still registered with the South Carolina Secretary of State. The plaintiff believes the principal has filed a Chapter 13 bankruptcy petition in the District of South Carolina. On October 25, 2005, default was entered against Special Forces for failure to plead or otherwise defend in this action as required by law.

[4] Additionally, the amount in controversy requirement was met.

forum of appropriate jurisdiction.

On January 11, 2006, a memorandum in support of its motion to abstain was filed by M.B. Kahn. In the memorandum, M.B. Kahn asserts that the court should voluntarily abstain from hearing the adversary proceeding under 28 U.S.C. § 1334(c)(1).[5] Citing a case decided by this court, M.B. Kahn contends that all of the twelve factors relevant to the determination of whether a court should voluntarily abstain are met. The plaintiff filed a memorandum in opposition to voluntary abstention, using different factors from a decision by a bankruptcy court in the District of Maryland. See Ernst & Young, LLP v. Devan (In re Merry-Go-Round Enters., Inc.), 222 B.R. 254, 256 (D. Md. 1998).  In its memorandum, the plaintiff concluded that abstention is not appropriate under these circumstances.[6]

## Discussion

Under 28 U.S.C. § 1334(c)(1), a federal court may voluntarily abstain from hearing a proceeding, arising under the Bankruptcy Code or related to a case under title 11, "in the interest of justice" or in "the interest of comity with State courts or respect for State law." This court has applied a twelve factor test when determining whether it should abstain from hearing a proceeding. See General Wood Preserving Co., Inc. v. Wind Gap Farms (In re General Wood Preserving Co., Inc.), Case No. L-02-00146-8-AP (Bankr. E.D.N.C. December 17, 2002). These factors were first identified by the Seventh and Ninth Circuits as relevant to a bankruptcy court's decision to abstain in a particular case. See In re Chicago, Milwaukee, St. Paul & Pac. R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993); In re

---

[5] At the hearing, U.S. Fire supported the motion for voluntary abstention.

[6] BB&T and the trustee were represented at the hearing on this matter and counsel informed the court that these defendants oppose the motion to abstain.

Eastport Assoc., 935 F.2d 1071, 1075-76 (9th Cir. 1991).

The first factor is "the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention." M.B. Kahn asserts that the effect on the estate is negligible. The plaintiff contends that its claims affect the estate because the outcome of the proceedings may increase the size of the indemnification claim asserted by U.S. Fire, affect the secured claim of BB&T, or reduce the claim asserted by M.B. Kahn or the plaintiff.

The second factor is "the extent to which state law issues predominate over bankruptcy issues." M.B. Kahn points out that all of the claims in the plaintiff's complaint involve state law issues, rather than bankruptcy. The plaintiff admits this case is exclusively concerned with questions of South Carolina law.

The third factor is "the difficulty or unsettled nature of the applicable law." The plaintiff argues that there has been no demonstration that the equitable and legal claims asserted in the complaint are areas of unsettled law in South Carolina. M.B. Kahn contends that the plaintiff's claims are based primarily upon equitable remedies under state law, remedies under state bond law, and remedies under state lien law. As equity turns on what is equitable in the applicable jurisdiction, M.B. Kahn alleges it will be difficult to apply another state's equitable doctrines. Analysis of another state's construction law will be equally laborious and M.B. Kahn argues that this factor supports abstention.

The fourth factor is "the presence of a related proceeding in state court or other nonbankruptcy court." The plaintiff asserts that there is no other proceeding in any court involving the parties to this lawsuit. M.B. Kahn contends that four other proceedings have been filed in South Carolina state court by subcontractors and sub-subcontractors of the debtor seeking monetary relief for work performed on

6

the project. Although these suits do not involve the plaintiff, the parties to these actions allegedly want to collect from the same funds held by M.B. Kahn from which the plaintiff seeks to recover.

The fifth factor is "the jurisdictional basis, if any, other than 28 U.S.C. § 1334." M.B. Kahn suggests that once the necessary parties are joined as plaintiffs to this action, diversity jurisdiction will be destroyed. The plaintiff believes the parties should not be joined as they are not necessary and may have adverse interests. Additionally, diversity jurisdiction currently exists as the plaintiff is a Louisiana company with its principal place of business in Baton Rouge and all of the defendants have different citizenship.

The sixth factor is "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case" and the seventh factor is "the substance rather than form of an asserted 'core' proceeding." In support of these factors, M.B. Kahn asserts again that the trustee and the estate will not be affected by the outcome of this lawsuit. The lawsuit is not a core proceeding because although the complaint seeks allowance of a claim and imposition of a lien, the liens are all equitable in nature. If this is a "core" proceeding, M.B. Kahn argues it is in form, not substance. The plaintiff argues that under 28 U.S.C. § 157(b)(2) this is a core proceeding as the claims are: 1) matters concerning the administration of the estate; 2) determinations of the validity, extent, or priority of liens, and 3) affect the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship.

The eighth factor is "the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court." As both parties have conceded there are no claims based on the Bankruptcy Code in the complaint, there are no core bankruptcy matters to consider.

The ninth factor is "the burden of [the bankruptcy court's] docket." Although the bankruptcy courts in the Eastern District of North Carolina have one of the most burdened dockets in the country, this court takes pride in its efficient and judicious disposition of cases and that factor will not weigh in either party's favor.

The tenth factor is "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties." M.B. Kahn argues that this court is not the "natural forum" for this case as it involves a construction project in another state and contracts made under the laws of that state. The plaintiff points out that all the responding defendants are subject to the jurisdiction of this court, have filed proofs of claim in this court, and have participated in proceedings before this court. As such, this forum is convenient for all parties.

The eleventh and twelfth factors are "the existence of a right to a jury trial" and "the presence in the proceeding of non-debtor parties." Although the defendants may have had a right to demand a jury trial, no demand was made in any of the answers and therefore, the right has been waived. The existence of non-debtor parties is not disputed by the parties.

The court finds that the factors in this analysis support voluntary abstention. Although claims asserted against the debtor may minimally increase as a result of this proceeding, the action will have little practical effect on the estate as all of the debtor's assets are secured. The majority of the claims in the plaintiff's complaint are asserted against M.B. Kahn and U.S. Fire, not the debtor. The underlying bankruptcy case is a Chapter 7 liquidation so there is not an ongoing business for the court to consider. A South Carolina state court can reach decisions affecting the debtor with as much efficiency as this court.

The plaintiff's claims are also based in equity and common law, rather than codified statutes. For this reason, it would be somewhat difficult for this court to apply South Carolina law. As there are four other existing proceedings in South Carolina related to the construction dispute, the plaintiff will be able to bring an action in South Carolina state court where the witnesses and necessary parties are located.

Mandatory abstention is inappropriate in this case because as pled, diversity jurisdiction exists. The defendant made a colorable argument that additional parties need to be joined that may destroy diversity but the court does not need to reach that argument.

## CONCLUSION

Based on the foregoing, the court concludes that it should voluntary abstain from hearing the claims raised in the plaintiff's complaint pursuant to 28 U.S.C. § 1334(c)(1). Accordingly, the complaint is dismissed without prejudice to the plaintiff's ability to renew its claims in another forum.

**So Ordered.**

**Dated: January 19, 2006**

J. Rich Leonard
United States Bankruptcy Judge